[Cite as *State ex rel. Mosley v. Indus. Comm.*, 2014-Ohio-1710.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Kelly R. Mosley, | : | |
| Relator, | : | |
| v. | : | No. 13AP-127 |
| The Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| Stephen Buehrer, Administrator | | |
| Bureau of Workers' Compensation, | : | |
| and American Thermal Instruments, | | |
| | : | |
| Respondents. | | |
| | : | |

---

D E C I S I O N

Rendered on April 22, 2014

---

*Hochman & Plunkett Co., L.P.A., Gary D. Plunkett*, and *Brett Bissonnette*, for relator.

*Michael DeWine*, Attorney General, and *Colleen C. Erdman,* for respondents Administrator, Bureau of Workers' Compensation and the Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Kelly R. Mosley ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its December 18, 2012 order that upheld the dismissal by the Ohio Bureau of Workers' Compensation ("bureau") of claimant's R.C.

4123.57 application for the determination of the percentage of permanent partial disability ("PPD") compensation, and to enter a commission order returning the application to the bureau for the scheduling of a medical examination by the bureau's medical section and the issuance of a bureau tentative order determining the percentage of PPD, even though relator is receiving permanent total disability ("PTD") compensation pursuant to a PTD award entered prior to the filing of his application for percentage of PPD.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court grant claimant's request for a writ of mandamus. Claimant has filed an objection to the magistrate's decision.

{¶ 3} In his sole objection, claimant argues that the magistrate erred when he found that the bureau was not required to determine his percentage of PPD resulting from the organic personality syndrome because he is receiving PTD benefits for that condition. Although claimant agrees that he cannot receive PPD benefits while receiving PTD benefits for the same condition, and PTD benefits are typically paid for the remainder of the recipient's life, he contends that he is still entitled to a determination of his percentage of PPD for organic personality syndrome because (1) his surviving spouse or other dependents would be entitled to receive his PPD award upon his death, and (2) there are several circumstances under which PTD compensation could terminate prior to his death, such as a return to work, fraud or medical improvement that qualifies him for work. Claimant's argument rests largely upon his disagreement with the magistrate's interpretation of *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78 (1997).

{¶ 4} The magistrate sufficiently summarized the facts from *Burrows*. The magistrate distinguished *Burrows* on two grounds. The magistrate first found that, unlike the instant case in which the bureau declined to process claimant's application, in *Burrows*, the bureau had already processed the claimant's application at the time of the Supreme Court of Ohio's adjudication; thus, the Supreme Court in *Burrows* did not issue a writ ordering the bureau to process the application. Instead, the Supreme Court in *Burrows* issued a writ to compel the commission to further consider the claimant's PPD

application. The magistrate also distinguished *Burrows* on the ground that *Burrows* involved a living maintenance wage loss award that would presumably end during the claimant's lifetime, but the instant case involved a lifetime award of PTD. Because it is undisputed that a claimant cannot receive PTD and PPD at the same time, the magistrate reasoned ordering the commission to process the application for a determination of the percentage of PPD would be a vain act because he would never be entitled to PPD, given PTD would end only upon claimant's death.

{¶ 5} We agree with the magistrate's reasoning. Claimant's contention that he is still entitled to a determination of a percentage of PPD because his surviving spouse or other dependents would be entitled to his PPD award upon his death is without merit. Both parties here agree that claimant cannot receive PTD and PPD simultaneously for the same condition and claim; thus, claimant himself would never be entitled to PPD. Claimant cites no authority for the proposition that a spouse or other dependent of a deceased workers' compensation claim can receive a PPD award to which the claimant was not entitled in his or her lifetime. A claimant's dependents would be entitled to the PPD award of the deceased claimant only if the claimant himself or herself were entitled to such an award during his or her lifetime. As claimant here is indisputably not entitled to such an award now or likely at any point in his lifetime because he is receiving PTD, his dependents also have no interest in a hypothetical award.

{¶ 6} Furthermore, we find without merit claimant's argument contesting the magistrate's conclusion that determination of the percentage of PPD would be a "vain" act. As explained above, claimant contends there are several circumstances under which a claimant's PTD compensation may terminate prior to the claimant's death; thus, a percentage of PPD determination might not be in vain. However, until one of these circumstances occurs, if ever, claimant can receive no award for a percentage of PPD. Therefore, we agree that any determination of the percentage of PPD, at this juncture, would be a vain act.

{¶ 7} We also agree with the magistrate that *Burrows* is clearly distinguishable on the ground that *Burrows* involved living maintenance wage loss that would presumably end during the claimant's lifetime, while the instant case involves a lifetime award of PTD. The outcome in *Burrows* is consistent with the two arguments claimant raises above in

support of his objection. Unlike the present case, in *Burrows*, the claimant's surviving spouse or dependents would be entitled to the PPD award because the claimant would have been entitled to the PPD award after the living maintenance wage loss compensation ended. In addition, the determination of the percentage of PPD in *Burrows* would not have been a vain act because living maintenance wage would eventually end, thereby entitling the claimant to PPD. Therefore, we agree that *Burrows* is not applicable to the circumstances in this case. For the foregoing reasons, claimant's objection is overruled.

{¶ 8} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of claimant's objection, we overrule the objection and adopt the magistrate's findings of fact and conclusions of law. We issue a writ of mandamus ordering the commission to vacate the December 18, 2012 order of its staff hearing officer that upheld the bureau's dismissal of claimant's application for the determination of the percentage of PPD and ordering the commission to enter an order that returns the matter to the bureau for the scheduling of a medical examination and the issuance of a tentative order in a manner consistent with the magistrate's decision.

*Objection overruled;*
*writ of mandamus granted.*

SADLER, P.J., and CONNOR, J, concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Kelly R. Mosley, | : | |
| Relator, | : | |
| v. | : | No. 13AP-127 |
| The Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| Stephen Buehrer, Administrator | | |
| Bureau of Workers' Compensation, | : | |
| and American Thermal Instruments, | | |
| | : | |
| Respondents. | : | |
| | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on January 17, 2014

---

*Hochman & Plunkett Co., L.P.A., Gary D. Plunkett* and *Brett Bissonnette*, for relator.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,* for respondents Administrator, Bureau of Workers' Compensation and the Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 9} In this original action, relator, Kelly R. Mosley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the December 18, 2012 order of its staff hearing officer ("SHO") that upheld the dismissal

by the Ohio Bureau of Workers' Compensation ("bureau") of relator's R.C. 4123.57 application for the determination for the percentage of permanent partial disability ("PPD"), and to enter a commission order returning the application to the bureau for the scheduling of a medical examination by the bureau's medical section and the issuance of a bureau tentative order determining the percentage of PPD, even though relator is receiving permanent total disability ("PTD") compensation pursuant to a PTD award entered prior to his filing of his application for the percentage of PPD.

Findings of Fact:

{¶ 10} 1. On September 23, 2002, relator sustained an industrial injury while employed with respondent American Thermal Instruments, a state-fund employer. The industrial claim (No. 02-855088) is allowed for multiple physical and psychological conditions. There are 23 allowed conditions in the claim.

{¶ 11} 2. Temporary total disability ("TTD") compensation was last paid on October 1, 2010.

{¶ 12} 3. On November 13, 2009, relator filed an application for PTD compensation.

{¶ 13} 4. Following a November 1, 2010 hearing, an SHO issued an order awarding PTD compensation starting October 1, 2010. Relying exclusively on a report from Dr. Mary Carole Curran, the SHO found that relator is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed psychological condition described as "organic personality syndrome." Therefore, the SHO found it unnecessary to consider or analyze the non-medical disability factors.

{¶ 14} 5. On September 7, 2012, relator filed an application for the determination of the percentage of PPD.

{¶ 15} 6. The bureau did not schedule relator for a medical examination by its medical section and thus the bureau did not issue a tentative order determining the percentage of PPD.

{¶ 16} 7. On September 10, 2010, the bureau mailed an order dismissing relator's application. The order explains:

On 09/07/2012, the injured worker filed an application for a determination or an increase in the percentage of permanent partial disability as a result of his/her work-related injury/disease. The Ohio Bureau of Workers' Compensation (BWC) hereby advises it has dismissed the Application for Determination of Percentage of Permanent Partial Disability or Increase of Permanent Partial Disability (C-92) without prejudice for the reason (s) listed below.

The Industrial Commission of Ohio by order dated 10/01/2010 has found the injured worker to be permanently and totally disabled.

{¶ 17} 8. Relator timely objected to the bureau's order.

{¶ 18} 9. Following a November 1, 2012 hearing, a district hearing officer ("DHO") issued an order that affirms the bureau's order. The DHO's order explains:

The District Hearing Officer denies the appeal filed by the injured worker on 10/01/2012. The District Hearing Officer affirms the Administrator's order dated 09/10/2012. It is the finding of the District Hearing Officer that the Injured Worker's c-92 application for determination of percentage of permanent partial disability filed 09/07/2012 is dismissed.

The District Hearing Officer notes that the injured worker was awarded statutory [sic] permanent total disability compensation by the Industrial Commission in this claim, 02-855088 by order issued 10/01/2010. The allowed medical conditions listed on the order were:

The injured worker filed an application for permanent partial disability on 09/07/2012. The Administrator issued an order on 09/10/2012 dismissing the Injured Worker's C92 application stating "The Industrial Commission of Ohio by order dated 10/01/2010 has found the injured worker to be permanently and totally disabled." The Injured Worker's representative acknowledge[d] at the hearing that the Injured Worker was not entitled to a permanent partial disability award for those conditions for which the Injured Worker has been granted permanent total disability compensation on 10/01/2010. Additionally, the Injured Worker's Representative stated that there are no new conditions that were not covered by the 10/01/2010 order.

> The District Hearing Officer finds that the proper course of action is to dismiss the injured worker's c92 application filed 09/07/2012.
>
> The District Hearing Officer finds the Injured Worker is currently receiving permanent total disability compensation in this claim. The injured worker is now requesting that he be provided permanent partial disability award under Ohio Revised Code 4123.57 (A) to run after the permanent total disability award in this claim and for that reason that the injured worker is now entitled to the examination and a designation of the award although the payout may be sometime after his death.

{¶ 19} 10. Relator administratively appealed the DHO's order of November 1, 2012.

{¶ 20} 11. Following a December 18, 2012 hearing, an SHO issued an order affirming the DHO's order. The SHO's order explains:

> It is the finding and order of the Staff Hearing Officer that the Injured Worker's C-92 application, filed 09/07/2012, is dismissed. The Staff Hearing Officer finds that the Injured Worker was awarded statutory [sic] permanent total disability compensation by the Industrial Commission on 10/2010, based upon the allowed conditions in this claim.
>
> This order is based upon Ohio Revised Code 4123.57 and the facts stated within the order.

{¶ 21} 12. On February 26, 2013, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of December 18, 2012.

{¶ 22} 13. On February 19, 2013, relator, Kelly R. Mosley, filed this mandamus action.

Conclusions of Law:

{¶ 23} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 24} On the date of relator's industrial injury, R.C. 4123.57 provided:

> Except as provided in this section, not earlier than forty weeks after the date of termination of the latest period of payments under section 4123.56 of the Revised Code, or not earlier than forty weeks after the date of the injury or

contraction of an occupational disease in the absence of payments under section 4123.56 of the Revised Code, the employee may file an application with the bureau of workers' compensation for the determination of the percentage of the employee's permanent partial disability resulting from an injury or occupational disease.

Whenever the application is filed, the bureau * * * shall schedule the employee for a medical examination by the bureau medical section. The bureau shall send a copy of the report of the medical examination to the employee, the employer, and their representatives. Thereafter, the administrator of workers' compensation shall review the employee's claim file and make a tentative order as the evidence before the administrator at the time of the making of the order warrants. * * *

* * * Unless the employee, the employer, or their representative notifies the administrator, in writing, of an objection to the tentative order within twenty days after receipt of the notice thereof, the tentative order shall go into effect and the employee shall receive the compensation provided in the order. * * *

If the employee, the employer, or their representatives timely notify the administrator of an objection to the tentative order, the matter shall be referred to a district hearing officer who shall set the application for hearing with written notices to all interested persons. Upon referral to a district hearing officer, the employer may obtain a medical examination of the employee, pursuant to rules of the industrial commission.

(A) The district hearing officer, upon the application, shall determine the percentage of the employee's permanent disability, * * * based upon that condition of the employee resulting from the injury or occupational disease and causing permanent impairment evidenced by medical or clinical findings reasonably demonstrable. The employee shall receive sixty-six and two-thirds per cent of the employee's average weekly wage, but not more than a maximum of thirty-three and one-third per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, per week regardless for the average weekly wage, for the number of weeks which equals the percentage of two hundred weeks. * * * A staff hearing officer shall hear

an application for reconsideration filed and the staff hearing officer's decision is final. * * *

* * *

Compensation payable under this division accrues and is payable to the employee from the date of last payment of compensation, or, in cases where no previous compensation has been paid, from the date of the injury or the date of the diagnosis of the occupational disease.

When an award under this division has been made prior to the death of an employee, all unpaid installments accrued or to accrue under the provisions of the award are payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee, and if there are no children surviving, then to other dependents as the administrator determines.

{¶ 25} Analysis begins with the observation that the commission's PTD award is premised exclusively upon the report of Dr. Curran. The SHO's order of November 1, 2010 finds that relator is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed psychological condition described as "organic personality syndrome." While the SHO's order states that the award is apportioned entirely to industrial claim number 02-855088, there is no indication that this apportionment in any way detracts from the commission's exclusive reliance upon one allowed condition—organic personality syndrome—to support the PTD award. That is to say, the PTD award is not premised upon any of the multitude of physical claim allowances.

{¶ 26} It can be further observed that relator's September 7, 2012 application for the determination of the percentage of PPD appears to list all of the allowed conditions of the claim both physical and psychological, as the bases for the compensation request.

{¶ 27} Notwithstanding the above observations, respondent commission here asserts that "[t]hrough its 2010 order, the commission determined that Mosley is permanently and totally disabled for the same twenty three conditions for which he now seeks to be found permanently and partially disabled." (Commission's brief, 8.)

{¶ 28} The commission's statement, as quoted, is incorrect. The commission determined that relator is permanently and totally disabled as a result of only one of the allowed conditions of the claim. The commission did not premise its PTD award on all of the allowed conditions as the commission incorrectly asserts.

{¶ 29} Throughout its brief, the commission repeatedly asserts that relator has been determined to be permanently and totally disabled for the "same" conditions that underlie his application for a determination of a percentage of PPD. Those factual assertions are incorrect.

{¶ 30} Compounding the commission's error here, relator also seems to fail to recognize that his PTD award is premised solely upon one allowed condition of the claim, i.e., the psychological condition described as "organic personality syndrome." At the very least, in his reply brief, relator does not protest the commission's incorrect factual assertions.

{¶ 31} In *State ex rel. Murray v. Indus. Comm.*, 63 Ohio St.3d 473 (1992), the court held that PPD and PTD compensation cannot be concurrently paid for the same conditions. *State ex rel. Hoskins v. Indus. Comm.*, 87 Ohio St.3d 560 (2000).

{¶ 32} Here, relator and the commission acknowledged the point of law set forth in *Murray* and reaffirmed in *Hoskins.* However, the parties fail to acknowledge the corollary to the *Murray* point of law as set forth in *State ex rel. Missik v. Youngstown,* 65 Ohio St.3d 189 (1992). Significantly, the *Missik* decision issued shortly after the *Murray* decision.

{¶ 33} In *Missik,* the claimant, George Missik, suffered three industrial injuries while working for the City of Youngstown: (1) claim number PE626746—"Bilateral sacroiliac injury," (2) claim number PEL4593—"Neck and shoulder," and (3) claim number PEL3212—"Injured back and left side." *Missik* at 190.

{¶ 34} In 1986, Missik filed for PTD compensation, listing only PEL3212 and PEL4593 on his application. On the commission's behalf, Missik was examined by Dr. William G. Kraus who opined that Missik is permanently and totally disabled based upon the allowed conditions in claim numbers PEL4593 and PEL3212. The commission's PTD award specified "that the cost of this award be allocated 100% to claim number PEL-3212." *Id.*

{¶ 35} Eventually, Missik sought PPD compensation in claim number PE626746 and PEL4593. A DHO dismissed both applications based on the PTD award. Reconsideration was denied in both claims.

{¶ 36} Issuing a writ, the *Missik* court explained:

> Pursuant to our decision in *State ex rel. Litten v. Indus. Comm.* (1992), 65 Ohio St.3d 178, 602 N.E.2d 624, we find that the commission's permanent total disability finding, by attributing the award's costs exclusively to PEL3212, did not encompass PEL4593 and PE626746. We thus find that the commission abused its discretion in dismissing claimant's permanent partial disability application in PEL4593. However, because PEL3212 and PE626746 both involve back injuries, the commission did not err in dismissing claimant's permanent partial disability application in the latter claim. *State ex rel. Consolidation Coal Co. v. Indus. Comm.* (1980), 62 Ohio St.2d 147, 16 O.O.3d 166, 404 N.E.2d 141.

*Id.* at 191.

{¶ 37} In the magistrate's view, based upon the undisputed facts of record, the *Missik* decision compels the issuance of a writ of mandamus in this action.

{¶ 38} The magistrate acknowledges that, unlike *Missik*, this action does not involve multiple industrial claims, but only the one industrial claim. Here, the PTD award is premised upon only 1 of the 23 allowed conditions of the claim. Therefore, by his application for the determination of the percentage of PPD in his sole industrial claim, relator was not seeking PPD compensation for the same conditions (or condition) that support his PTD award. Both the bureau and the commission failed to recognize this distinction in their orders, and, as a result, relator was denied a statutory right under R.C. 4123.57.

{¶ 39} Clearly, under R.C. 4123.57, upon the filing of the application, the bureau was required to schedule relator for a medical examination by the bureau's medical section at least for the allowed physical conditions of the claim. Following the issuance of the medical report, the bureau was required to make a tentative order.

{¶ 40} Because the bureau failed to schedule relator for a medical examination and to issue a tentative order, and the commission's hearing officers failed to order the bureau to do so, a writ of mandamus must issue

{¶ 41} The magistrate notes again that relator did not seek relief in this action pursuant to *Missik*. Rather, relator "concedes that he is not eligible to have the [PPD] award paid out until the cessation of his permanent and total disability compensation benefits." (Relator's brief, 12.)

{¶ 42} Apparently, relator seeks a writ that would order the bureau to determine the percentage of PPD as to all 23 of the allowed conditions of the industrial claim following a bureau medical examination. Citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78 (1997), relator argues that he has the right to a bureau determination of his percentage of PPD presumably as to all allowed conditions of his claim even though, concededly, the PPD award could not be lawfully paid while he receives PTD compensation. That is, relator argues that *Burrows* compels the bureau and commission to enter a PPD award that cannot be paid until cessation of his PTD award. The magistrate notes that R.C. 4123.58(A) provides that "the employee shall receive an award to continue until the employee's death." Thus, a PTD award is ordinarily a lifetime award. *State ex rel. Smothers v. Mihm*, 69 Ohio St.3d 566 (1994). In effect, relator seeks a PPD award that he would, in all likelihood, never receive payment for. Relator further contends that, upon his death, his PPD award would be paid to "his heirs," (Relator's brief, 17.) pursuant to the provision of R.C. 4123.57 stating that "all unpaid installments accrued or to accrue under the provisions of the award are payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee, and if there are no children surviving, then to other dependents as the administrator determines."

{¶ 43} Relator's reliance upon *Burrows* is misplaced. A review of that case is in order.

{¶ 44} Ruth Burrows injured her back, shoulder, and hip in October 1987 while working at Akron City Hospital. After allowance of her industrial claim, Burrows received TTD compensation pursuant to R.C. 4123.56(A) until November 4, 1990, when she entered a rehabilitation program. While participating in the rehabilitation program, Burrows received living maintenance benefits under R.C. 4121.63. She returned to work on January 14, 1991 and, due to her physical limitations, assumed a position that did not

pay as well as her former job.  As a result, Burrows qualified for living maintenance wage loss compensation under R.C. 4121.67(B).

{¶ 45} On May 12, 1992, Burrows applied for a determination of her percentage of PPD.  The bureau initially awarded PPD compensation in a tentative order.  Upon the hospital's objection, a DHO determined Burrows' percentage of PPD to be at 18 percent. The hospital requested reconsideration, arguing that:  (1) R.C. 4123.57(A) claimants could not apply for PPD under the statute until 40 weeks after their last payment for living maintenance wage loss compensation, and (2) Burrows had filed her application while still receiving this compensation.  An SHO agreed with the hospital and dismissed Burrows' application as untimely on the authority of R.C. 4123.63, 4121.67(B), and 4123.57.

{¶ 46} Burrows then filed in this court a complaint for a writ of mandamus. Citing the plain language of R.C. 4123.57, this court granted the writ and returned the cause to the commission for an appropriate determination of Burrows' PPD eligibility. An appeal as of right was taken to the Supreme Court of Ohio.

{¶ 47} In *Burrows*, the Supreme Court held that Burrows' application for a determination of her percentage of PPD was not barred by the R.C. 4123.57 waiting period.  The R.C. 4123.57 waiting period is to be measured from the last date of receipt of R.C. 4123.56 compensation.  For purposes of the waiting period, neither R.C. 4121.67(B) nor 4123.63 is considered to be R.C. 4123.56 compensation.

{¶ 48} However, the *Burrows* court also held that percentage of PPD awards under R.C. 4123.57(A) cannot be paid to claimants receiving either living maintenance or living maintenance wage loss compensation.

{¶ 49} As earlier noted, at the time of the filing of her application for the determination of her percentage of PPD, Burrows was receiving living maintenance wage loss compensation.  In the last paragraph of its decision, the *Burrows* court states:

> Having found that R.C. 4123.57(A) imposes the forty-week waiting period for TTD paid specifically pursuant to R.C. 4123.56, notwithstanding that claimants cannot be paid living maintenance wage loss compensation and R.C. 4123.57(A) PPD at the same time, we affirm the judgment of the court of appeals that grants a writ of mandamus to

> compel the commission's further consideration of Burrows's PPD application.

*Id.* at 82.

{¶ 50} Here, relator contends that, in *Burrows* "the Supreme Court found that the issue of whether a permanent partial disability award was payable must be separated into two steps. First, the initial threshold of whether the Application must be determined must be addressed. If so, then the second issue, whether benefits are payable to the claimant, can be addressed." (Relator's brief, 10.)

{¶ 51} Relator fails to explain how he arrived at his "two steps" theory from a reading of *Burrows.* (*See* relator's brief, 10.) However, the magistrate notes that, unlike the instant case, in *Burrows*, the bureau processed Burrows' application. In fact, the bureau awarded PPD compensation in a tentative order that presumably followed a bureau medical examination. In *Burrows,* unlike the instant case, the application was not dismissed until reconsideration by the SHO. Clearly, the *Burrows* court did not issue a writ ordering the bureau to process the application. In *Burrows*, the application had already been processed at the time of the court adjudication.

{¶ 52} However, this court did issue a writ that "returned the cause to the commission for an appropriate determination of Burrows' PPD eligibility." *Id.* at 79. This court's judgment was affirmed and the *Burrows* court did issue a writ "to compel the commission's further consideration of Burrows' PPD application." *Id.* at 82.

{¶ 53} Unlike the instant case involving the bar of a lifetime PTD award, *Burrows* involved living maintenance wage loss compensation under R.C. 4121.67(B). Although Burrows was receiving living maintenance wage loss compensation at the time she filed her application for the determination of her percentage of PPD, presumably, payment of living maintenance wage loss compensation will end during Burrows' lifetime. It may very well have ended by the time of the issuance of the writ by the *Burrows* court. In any event, the issuance of a writ requiring the commission to determine Burrows' "eligibility" makes perfect sense.

{¶ 54} Notwithstanding the above analysis, *Burrows* does not here mandate a writ returning the matter to the commission or bureau for an adjudication of the

application based upon all allowed conditions of the claim. For as long as relator is receiving his lifetime PTD award, granting relator's specific request here would indeed compel the bureau and commission to perform a vain act.

{¶ 55} In short, relator's reliance upon *Burrows* to support his request for a writ of mandamus is misplaced.

{¶ 56} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the December 18, 2012 order of its SHO that upheld the bureau's dismissal of relator's application for the determination of the percentage of PPD, and to enter an order that returns the matter to the bureau for the scheduling of a medical examination and the issuance of a tentative order in a manner consistent with this magistrate's decision.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).